# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 1:15-cr-181-02 |
| | : | Civil No. 1:18-cv-2079 |
| v. | : | |
| | : | Judge John E. Jones III |
| LEANDRO NAZARIO, | : | |
| Defendant. | : | |

## **MEMORANDUM**

### **December 11, 2019**

Before the Court is the Motion Under 28 U.S.C. 2255 to Vacate, Set Aside, or Correct Sentence by Person in Federal Custody (Doc. 794) filed by Leandro Nazario ("Nazario" or "Defendant"). The Motion has been fully briefed by the parties (Docs. 818 and 820) and is therefore ripe for our review. For the reasons that follow, the Motion shall be denied, and no certificate of appealability shall issue.

### **I.      BACKGROUND**

On April 3, 2017, Defendant pled guilty to Count One of a 21-count Indictment charging him with conspiracy to distribute and possess with intent to distribute one kilogram and more of heroin, 280 grams and more of cocaine base and an unspecified quantity of cocaine hydrochloride in violation of 21 U.S.C. §

846. (Doc. 1). The Defendant's guilty plea was made pursuant to a plea agreement. (Doc. 405).

Following the entry of the plea, the assigned United States Probation Officer rendered a Presentence Investigation Report ("PSR") to which Nazario filed, through counsel, several objections. Nazario objected to the firearms enhancement the leadership enhancement, the two-level pattern of criminal conduct enhancement and the drug quantity. Nazario later withdrew his objection to the drug quantity, firearm and pattern of criminal conduct enhancements. We sustained Nazario's objection the leadership enhancement in part, and applied a 3-level enhancement rather than the 4-level enhancement that was contained in the PSR. The total offense level was ultimately determined to be 39 and Nazario's criminal history category was scored at I, resulting in an advisory sentencing guidelines range of 262 to 327 months imprisonment.

Through counsel Nazario filed a detailed sentencing memorandum as well as character letters penned on Nazario's behalf. (Docs. 703 and 722). Counsel argued several grounds for a variance from the sentencing guidelines, and the Court, at sentencing, granted a variance based on the Defendant's lack of criminal history. On April 3, 2018, we sentenced Nazario to 240 months imprisonment, five years supervised release and a $100 special assessment. A fine was not levied based on

Nazario's inability to pay. (Doc. 731). Nazario did not take a direct appeal of his conviction or sentence to the United States Court of Appeals for the Third Circuit.

## II. DISCUSSION

Nazario raises three grounds for relief in his Motion. They all concern the claims that his counsel rendered ineffective assistance. Nazario's arguments are summarized as follows:

1) Defense counsel was ineffective for failing to challenge the post-arrest statement of Julio Aviles, Sr.;

2) Defense counsel was ineffective for failing to properly argue for a variance based on sentencing disparities; and

3) Defense counsel was ineffective in his representation of Defendant at the guilty plea and sentencing.

### A. Ineffective Assistance of Counsel

Since all of Nazario's claims sound in ineffective assistance of counsel, we begin with the well-established standard for such claims under 28 U.S.C. § 2255. In order to successfully demonstrate ineffective assistance of counsel, a petitioner must establish that (1) the performance of counsel fell below an objective standard of reasonableness; and (2) the errors of counsel prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 687-92, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

The first prong of the *Strickland* test requires the defendant show that counsel's performance was actually deficient. *Jermyn v. Horn,* 266 F.3d 257, 282 (3d Cir. 2001). A court "deciding an actual ineffectiveness claim must judge the reasonableness of the counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland,* 466 U.S. at 690. Counsel's conduct presumptively "falls within the wide range of reasonable professional assistance," and the defendant "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689-90 (quoting *Michel v. Louisiana,* 350 U.S. 91, 93, 76 S. Ct. 158, 100 L. Ed. 83 (1955)).

The second prong of the *Strickland* test requires the defendant show that the deficient performance so prejudiced the defense as to raise doubt as to the accuracy of the outcome of the trial or sentence. *Strickland*, 466 U.S. at 693-94. The petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Jermyn,* 266 F.3d at 282 (quoting *Strickland,* 466 U.S. at 693). A "reasonable probability," for the purposes of establishing prejudice, is "a probability sufficient to undermine confidence in the outcome." *Id.*

We shall discuss each of Nazario's claims *seriatim*.

### 1. Ground One: Post-Arrest Statement of Julio Aviles, Sr.

Nazario claims that his counsel was ineffective for challenging the admissibility of a post-arrest statement made by Julio Aviles, Sr., the ringleader of the drug operation giving rise to the charges in this case. Specifically, Aviles, Sr. identified Nazario as his second-in-command and noted that he intended to turn over the drug trafficking organization to Nazario. Nazario contends that these statements alone underpinned the Probation Officer's application of the organizer/leader enhancement in the PSR, and his counsel's failure to move to suppress these statements amounts to ineffective assistance.

At the outset, we note that Julio Aviles, Sr. himself moved to suppress the admissibility of his post-arrest statements in January of 2016. (Doc. 199). Following an evidentiary hearing and post-hearing briefing, such motion was denied by this Court in June of 2016, which was nearly a year before Nazario entered his guilty plea. (Doc. 254). Thus, we can hardly find that Nazario's counsel was ineffective for failing to re-litigate an issue that had already been raised, thoroughly considered and ruled upon by the Court.

Moreover, we find that Nazario was not prejudiced by the admissibility of Aviles, Sr.'s statements against him for the following reasons.[1]

Nazario contends that the post-arrest statement of Julio Aviles, Sr. forms the basis of the leadership enhancement applied by the Probation Officer, and that without Aviles, Sr.'s statement, he would not be considered an organizer/leader. He further contends that the suppression of Aviles, Sr.'s statement from the record would actually qualify him for a minor role reduction pursuant to U.S.S.G. § 3B1.2. Both of these contentions are factually incorrect.

Nazario's contention that Julio Aviles, Sr.'s post-arrest statement was the only evidence supporting his role as an organizer/leader in the drug conspiracy is unavailing. Nazario was indicted in this drug conspiracy alongside a dozen co-defendants. Many of these co-defendants cooperated with the Government, providing abundant evidence that Nazario operated as the foreman of the drug processing mill, was paid at a higher rate than the lower-level drug packagers, and oversaw the daily activities of the drug organization in Aviles, Sr.'s absence. This evidence not only supports an aggravating role enhancement under §3B1.1, it completely eviscerates any contention that Nazario could have received a mitigating role adjustment under §3B1.2.

---

[1] To clarify, although Nazario indicates within his submissions that he was subjected to a 4-level organizer/leader enhancement under U.S.S.G. § 3B1.1, we did sustain his objection to this enhancement, in part, and only applied a 3-level enhancement.

Thus, Nazario's assertion that Aviles, Sr.'s statements alone secured the organizer/leader enhancement is meritless. We further note that Nazario's counsel objected to the applicability of the enhancement and was able to effectively argue for a one-point reduction in the enhancement as applied by the Court, a demonstration of appropriate advocacy by an attorney on the part of his client. Nazario's counsel lacked any basis to argue for a further reduction, and thus was not ineffective for his failure to do so.

The Motion will be denied with respect to Ground One.

**2. Ground Two: Sentencing Disparities**

Nazario next contends that his counsel was deficient for failing to appropriately argue issue of sentencing disparities at sentencing.

To review, 18 U.S.C. § 3553(a) sets forth various factors the Court must consider when sentencing any defendant. Specifically, §3553(a)(6) instructs a court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

Nazario's argument on this point is entirely dismantled by the record in this case. At sentencing, counsel made a thorough and articulate argument, specifically addressing the fact that Nazario's sentencing exposure – a guideline range of 262 months to 327 months -- was significantly higher than any of the sentences

imposed upon Nazario's co-Defendants. Counsel argues that Nazario was most similarly situated to his wife and co-Defendant Suheidy Soto-Concepcion, who had received a sentence of 120 months. Defense counsel did, however, recognize the difference in the conduct of Nazario and his wife, and thus argued for a 156-month sentence for Nazario – which was over 100 months below the bottom of the guideline range. While defense counsel's argument was cogent and appropriate, we did not accept the invitation to grant such a large variance to Nazario. Rather, we granted him a 22 month variance, and sentenced him to 240 months, after a careful assessment of the facts of the case, the characteristics and criminal history of the Defendant and the arguments of the parties.

Based on the foregoing, the Motion will be denied with respect to Ground Two.

**3**. **Ground Three: Ineffectiveness at Guilty Plea and/or Sentencing**

Though somewhat inarticulately framed, in Ground Three of his Motion, Nazario contends that he would not have pled guilty if he had known the sentence he would have received, particularly since it was in excess of his co-defendants' sentences. He also argues generally that his counsel did not make sufficient arguments to mitigate his advisory guideline calculation, specifically as it related to drug weight. Neither of these arguments have merit.

8

Nazario argues that when counsel was advising him concerning his guilty plea, he "informed defendant that he would receive a lenient sentence, he did not think that sentence would be more then [*sic*] the highest term of incarceration that had already been given to one of the other codefendants which was 180 months . . ." (Doc. 794, Ground 3). This statement by Nazario can be easily characterized as a blatant misrepresentation, because at the time Nazario entered his plea of guilty pursuant to a signed plea agreement, *no other Defendant had been sentenced.* Israel Nazario, the co-defendant who received the 180-month sentence referenced in this statement, was sentenced six months later, in October of 2017. Thus, Nazario's counsel could not have given him this purported advice in considering whether to take the plea deal offered by the Government. Given the falsity upon which this argument is predicated, we need not consider it further.

Finally, Nazario takes issue with a particular reference in his PSR concerning 56.11 grams of heroin stolen from Julio Aviles, Sr.'s vehicle in 2013. Nazario contends that because he did not become involved with the conspiracy until March of 2014, the attribution of this 56.11 grams of heroin to him was inappropriate, and as a result counsel's failure to raise this argument was deficient. We disagree.

Ultimately, Nazario was found to be responsible for 12 *kilograms* of heroin, in addition to 5236 grams of cocaine and 463 grams of crack. That counsel did

not dispute a finding within the PSR concerning 56.11 grams of heroin certainly does not rise to the level of deficient performance in the face of the vast drug quantities at issue in this case. In any event, even if the 56.11 grams of heroin were not attributed to Nazario, his guideline range would not have been altered.[2]

Nazario's Motion shall be denied with respect to Ground Three.

**B. Certificate of Appealability**

Based on the foregoing analysis, we do not find that Nazario has made a substantial showing of the denial of a constitutional right, and as such, no certificate of appealability shall issue.

An appropriate Order follows.

---

[2] In the PSR, Nazario's base offense level is 34, pursuant to U.S.S.G. § 2D1.1. Because the offense involved multiple controlled substances (cocaine, heroin, and crack cocaine), each drug is converted into its marijuana equivalent and combined to achieve a single offense level. Here, the marijuana equivalency was 13,763.39 kilograms, which triggered the base offense level of 34 used for an offense involving at least 10,000 but less than 30,000 kilograms of marijuana. Thus, the deletion of 56.11 grams of heroin from the drug quantity would not move the amount so significantly as to lower Nazario's base offense level.